UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

DEBRA SCHATZKI and BPP WEALTH, INC.,

              Plaintiffs,

    - against -

WEISER CAPITAL MANAGEMENT, LLC, et al.,

              Defendants.
----------------------------------------X

10 Civ. 4685 (RWS)

OPINION

A P P E A R A N C E S:

      Attorneys for Plaintiffs

      LAWLER MAHON & ROONEY LLP
      36 West 44th Street, Suite 1400
      New York, NY 10036
      By:  Albert K. Lawler, Esq.
          Christopher S. Rooney, Esq.
          Oliver Edwards, VII, Esq.

      BECKER & POLIAKOFF, PA
      45 Broadway, 8th Floor
      New York, NY 10006
      By:  James J. Mahon, Esq.

      Attorneys for Defendants

      STARK & STARK, P.C.
      993 Lenox Drive, Bldg. 2
      Lawrenceville, NJ 08543
      By:  Scott I. Unger, Esq.
          Jonathan A. Scobie, Esq.

**Sweet, D.J.**

Defendant-Counterclaim Plaintiff WeiserMazars Wealth Advisors, LLC, f/k/a Weiser Capital Management, LLC ("WCM" or "Defendant") has moved pursuant to Rule 56, Fed. R. Civ. P., for partial summary judgment to dismiss Plaintiffs-Counterclaim Defendants Debra Schatzki's and BPP Wealth, Inc.'s ("Schatzki" and "BPP," respectively; collectively "Plaintiffs") eighth affirmative defense (the "Illegality Defense") and Count IV of the Third Amended Complaint ("TAC"). The Plaintiffs have cross-moved for summary judgment under the same Rule to dismiss WCM's First Counterclaim for breach of contract. Based on the facts and conclusions set forth below, the motion of the Defendants is denied and the cross-motion of the Plaintiff is granted.

## I.   Prior Proceedings

After her termination by WCM on May 3, 2010, Schatzki commenced litigation in June 2010. Plaintiffs' TAC contained six counts, including two breach of contract claims: Counts III and IV. Count III alleged that, separate and apart from Schatzki's base salary and split of commissions and fees WCM agreed to pay her, WCM also agreed to pay BPP a licensing fee equal to 10% of the business generated by Schatzki's BPP team in return for the

1

use of its trademarks and business system (the "Override Claim"). Count IV of the TAC alleged that WCM breached its agreement to pay Schatzki her share of commission fees earned in 2009 and 2010 (the "Commissions Claim"). The Override Claim and the Commissions Claim involve two distinct alleged agreements between Schatzki and WCM.

The Defendant's counterclaims asserted, *inter alia*, that Schatzki had agreed to pay it "all money and other things of value . . . specifically including commissions, that she received;" that this promise specifically included commissions for "the sale of mutual funds and variable annuities;" that Schatzki had represented that she would pay "all her income" to WCM; that "her earned income included only that which Wealth Advisors had been paying her;" and that she "did not mention, but intentionally omitted the broker-dealer commission income on transactions for Wealth Advisors' clients whom she had brought to the company" ("WCM Counterclaims"). ECF No. 299, ¶¶ 108, 111, 115, 117, 121.

By November 25, 2013 order, this Court dismissed the breach of contract claims. Schatzki v. Weiser Capital Mgmt., LLC, No. 10 Civ. 4685, 2013 WL 6189465 (S.D.N.Y. Nov. 26, 2013), vacated in part sub nom. BPP Wealth, Inc. v. Weiser Capital

2

Mgmt., LLC, 623 F. App'x 7 (2d Cir. 2015) [hereinafter, the "November 25 Order"]. The TAC's trademark infringement, conversion, and unjust enrichment claims were tried in January 2014. A final judgment awarding damages to Schatzki and BPP on their trademark infringement and conversion claims was entered in March 2014. After additional motion practice, the parties filed notices of appeal.

In an opinion and order dated August 24, 2015, the United States Court of Appeals for the Second Circuit affirmed this Court's judgment awarding Schatzki money damages on her conversion claim (including pre-judgment interest) and trademark infringement claim. BPP Wealth, Inc. v. Weiser Capital Mgmt., LLC, 623 F. App'x 7 (2d Cir. 2015) [hereinafter, the "Remand Order"]. As to the breach of contract claims, the Second Circuit reversed the November 25 Order and remanded the action for retrial. Id. at 13-14.

The instant motion and cross-motion were marked fully submitted on August 4, 2016.

3

**II.  The Facts**

The facts are set forth in Defendant's Statement of
Material Facts Pursuant to Local Rule 56.1, Responses and
Objections to Defendants Rule 56.1 Statement of Uncontested
Material Facts in Support of Motion for Partial Summary and
Plaintiff-Counterclaim Defendants Statement of Material Facts
and are not in dispute except as noted below.

Schatzki, a registered representative of a broker-
dealer, performed broker-dealer work while she was employed by
WCM. WCM was a registered investment advisor, and not a broker-
dealer. While employed by WCM, Schatzki, through her broker-
dealer, sold securities-based variable annuities and variable
life insurance policies. Whether the clients were serviced by
WCM is disputed.

Schatzki received commissions from three different
broker-dealers for the sale of broker-dealer products while she
was employed by WCM as well as "trail commissions" predating her
hiring by WCM. During the period Schatzki was employed at WCM,
one of four lines of income from which she earned fees or
commissions was broker-dealer commissions from the sale of
variable life insurance products and some mutual funds and

4

annuity products ("broker-dealer products"). The broker-dealer
commissions Schatzki earned on the sale of variable annuities
and variable life insurance policies while she was employed by
WCM were paid directly to her from the broker-dealer.

Marc Bodner ("Bodner") was one of Schatzki's clients.
Bodner became one of Schatzki's clients prior to October 1,
2007. Schatzki sold Bodner a variable life insurance policy.
Schatzki's sale of a variable life insurance policy to Bodner
went through a broker-dealer. Schatzki received a broker-dealer
commission for the sale of the variable life insurance policy to
Bodner, which was deposited into Schatzki's checking account at
Signature Bank, where all of her broker-dealer monies were
deposited while she was employed by WCM. Schatzki authorized the
execution of Check #2167 from her Signature Bank checking
account dated February 4, 2010 in the amount of $10,968.00,
payable to WCM. Check #2167 was written to reimburse WCM for the
commission she received on the sale of "Policy #4864552" to
Bodner. Policy #4864552 that Schatzki sold to Bodner was a
variable life insurance policy.

Schatzki sold a variable life insurance policy to
Douglas Phillips ("Phillips"). Phillips was not a client of
Schatzki until after October 1, 2007. Schatzki's sale of a

5

variable life insurance policy to Phillips went through a
broker-dealer. Schatzki received a commission from the broker-
dealer for her sale of a variable life insurance policy to
Phillips. Schatzki authorized the execution of Check #2056 from
her Signature Bank checking account dated June 18, 2009 in the
amount of $49,746.25, payable to WCM's affiliate Weiser Risk
Solution. Schatzki's Check #2056 to Weiser Risk Solution was for
"Commission for Doug Phillips SVU Policy – Policy #4649659." The
SVU Policy #4649659 that Schatzki sold to Phillips was a
variable life insurance policy.

       Schatzki testified at deposition in this action that
she had caused her commissions to be paid to WCM. Schatzki also
testified that BPP had assigned its commission to WCM's sister
entity, which was a licensed insurance broker fully qualified to
receive insurance commissions. On one or more occasions between
October 1, 2007 and May 5, 2010, Schatzki paid a share of
commissions or fees arising from her activities as an associated
person of a broker-dealer to WCM; for example, she transferred
to WCM the broker-dealer commissions she earned from the sale of
broker-dealer products to Bodner and Phillips. According to
Plaintiffs, these payments were assigned as advances against
overhead expenses.

During her deposition, Schatzki testified that WCM could have received broker-dealer money if the policy was written in the name of Lisa Osofsky, a WCM employee who, like Schatzki, was a registered representative affiliated with a broker-dealer. At trial, Schatzki testified that she had WCM working on her broker-dealer clients, and that WCM was aware of any agreement to the disposition of broker-dealer commission. She testified that all of the broker-dealer money went into her pocket, but that she readjusted her compensation at WCM at the end of the year based upon receipt of the commissions. Schatzki further testified that WCM had knowingly agreed that she would receive commissions from the sale of securities products through her affiliation with broker-dealers, subject to a limited reconciliation, and that the fee arrangement was dictated "by law."

In 2014, WCM filed a lawsuit against Schatzki in New York State Supreme Court ("State Action") substantively duplicative of the relief in the WCM Counterclaims in this action. In the State Action, Douglas A. Phillips, a partner of WCM's parent entity, submitted sworn testimony that neither he, nor "to my knowledge, anyone else in a position of authority" at WCM ever had any knowledge that Schatzki received commissions on

7

the sale of securities, that WCM did not receive "any part" of those commissions, and that Schatzki "withheld their existence from" WCM and that this alleged deception was "the reason I authorized this suit." Unger Decl., Ex. A, at ¶¶ 7, 11.

This year, Phillips stated under oath that WCM did know that Schatzki sold securities products for commissions, and knew it from the beginning of their business relationship. See Mahon Decl., Ex. 1, at 20:21-21:9, 26:6-9. Phillips said that his previous affidavit had to be understood in "context," but he was instructed not to answer questions about that context by his attorney. Id. at 33:1-36:12. Phillips also stated that Schatzki never promised to give WCM income generated on sales made before she joined WCM. Id. at 62:14, 67:20-68:11.

## III.   The Applicable Standard

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "[T]he substantive law will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)

8

A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. Westinghouse Elec. Corp. v. N.Y. City Transit Auth., 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting Anderson, 477 U.S. at 249). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original).

While the moving party bears the initial burden of showing that no genuine issue of material fact exists, Atl. Mut. Ins. Co. v. CSX Lines, L.L.C., 432 F.3d 428, 433 (2d Cir. 2005), in cases where the non-moving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the

9

nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). "It is ordinarily sufficient for the movant to point to a lack of evidence . . . on an essential element of the non-movant's claim . . . . [T]he nonmoving party must [then] come forward with admissible evidence sufficient to raise a genuine issue of fact for trial . . . ." <u>Jaramillo v. Weyerhaeuser Co.</u>, 536 F.3d 140, 145 (2d Cir. 2008) (internal citations omitted); <u>see also</u> <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995) ("Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party ... must come forward with evidence that would be sufficient to support a jury verdict in his favor").

## IV. The Defendant's Motion to Dismiss the Plaintiff's Illegality Defense is Denied

WCM contends that Schatzki's eighth affirmative defense to the WCM Counterclaims alleging its entitlement to Schatzki's commission on sales of variable annuities and life insurance products involving securities should be stricken as a matter of law (the "Illegality Defense"). It is the Plaintiffs' position that since these products constitute securities products, they could only be sold by registered broker-dealer

10

and registered representatives. See Securities Exchange Act of 1934, § 15 (codified at 15 U.S.C. § 78o) [hereinafter, the "Exchange Act"] (prohibiting non-registered broker-dealers from using the instrumentalities of interstate commerce to sell securities). Plaintiffs allege that since WCM is an "SEC registered advisory firm" and not a registered broker-dealer, WCM could not sell the products from which the broker-dealer income arose, nor could it receive the broker-dealer income.

The facts establish that Schatzki's broker-dealer income derived from the sale of products involving securities, which may only be legally sold by a registered broker-dealer or its representatives. WCM has conceded that it has never been a registered broker-dealer and further that it is "illegal for a registered representative such as Schatzki to share broker-dealer commissions with someone who is a broker-dealer but is not registered." WCM Reply Mem. of Law, at p. 2. Instead, WCM has contended that as a registered investment advisor, WCM could have received the broker-dealer income without violating the Exchange Act. Id. at pp. 2-3.

In Foundation Ventures, LLC v. F2G, Ltd., the Southern District of New York refused to find illegality in a contract because it found that the Plaintiff could plausibly claim to

11

have acted solely as a "finder" as opposed to a broker, despite the troubling indication of an agreement to share commissions. No. 08 CIV. 10066 (PKL), 2010 WL 3187294, at *20 (S.D.N.Y. Aug. 11, 2010). Similarly, in SEC v. Kramer, the court made the distinction between a "finder" and a "broker," invoking a "limited, so-called 'finder's exception' that permits a person or entity to perform a narrow scope of activities without triggering the broker-dealer registration requirements." 778 F. Supp. 2d 1320, 1336 (M.D. Fla. 2011). The court determined that "[m]erely bringing together the parties" is not brokerage activity, but more regular and extensive involvement in securities transactions will require registration to avoid penalty. Id. (internal quotations and citations omitted).

WCM has not alleged that it had arranged to act as a "finder" for Schatzki. Cf. Springwell Corp. v. Falcon Drilling Co., Inc., 16 F. Supp. 2d 300, 304 (S.D.N.Y. 1998) ("It is well-settled that the Statute of Frauds applies to claims for finder's fees" in New York). WCM has not alleged, let alone proved, the existence of any writing memorializing such an agreement. Here, the alleged contract with WCM anticipated that WCM would regularly receive all of Schatzki's commission income from the sale of securities, see WCM Counterclaims at ¶ 108, a factor deemed highly probative on the issue of whether an

12

unlicensed person is a broker under the Exchange Act. See SEC v. Hansen, No. 83 Civ. 3692, 1984 WL 2413, at *10-11 (S.D.N.Y. Apr.6, 1984); see also SEC v. Kenton Capital, Ltd., 69 F.Supp. 2d 1, 12-13 (D.D.C. 1998) (Kollar-Kotelly, J.) (describing "regularity of participation" as one of the primary indicia of "engag[ing] in the business") (internal quotations omitted).

Both the Securities and Exchange Commission ("SEC") and the Financial Industry Regulatory Authority ("FINRA") have asserted that it is unlawful for registered representatives (like Plaintiff Schatzki) to share securities-related commissions with non-registered companies (like WCM). In a 1993 no-action letter, the SEC declined to recommend no enforcement action where a registered broker-dealer ("SML") proposed an arrangement that would calculate compensation for a non-broker-dealer insurance firm according to securities sales by its agents in exchange for facilitating recruitment of those agents by the broker dealer. See The Sec. Mut. Life Ins. Co. of Lincoln, Nebraska, 1993 WL 455423 (S.E.C. No-Action Letter Oct. 26, 1993). The principal objections raised by the SEC were that "(1) SML would receive compensation directly based on securities transactions; (2) SML would receive such compensation on a continuous basis; and (3) SML would receive such compensation based on the activities of its Agents . . . ." Id. at *5.

13

In another no-action letter, the SEC declined to recommend no enforcement action where a non-broker-dealer firm proposed deducting overhead expenses from commission checks received by the registered representatives who were also shareholder/owners of the firm. See Herbruck, Alder & Co., 2002 WL 32169905 (S.E.C. No-Action Letter May 3, 2002). The SEC noted that "[a]bsent an exemption, an entity that receives securities commissions or other transaction-based compensation . . . generally is itself [] required to register as a broker-dealer." Id. at *2. The SEC also noted that this principle applies not only to the person taking orders for securities transactions, but "also [to] any other person who acts as a broker with respect to that order, such as the employer of the registered representative or any other person in a position to direct . . . securities activities." Id.

Taking the same position as the SEC, FINRA promulgated Rule 2040[1], under which FINRA members are specifically prohibited from paying commissions to those who are not registered as broker-dealers under Section 15(a) of the Exchange Act.

---

[1] This Rule is the successor to Rule 2420-1 promulgated by the National Association of Securities Dealers, which prohibited members from paying commissions to non-members.

Accordingly, under applicable FINRA rules, Schatzki, a FINRA

member, could not permissibly share her securities-related

commissions with WCM, which was not registered with the SEC as a

broker-dealer. Doing otherwise would subject the Schatzki to

significant disciplinary sanctions under FINRA Rule 8310.


FINRA's predecessor, the National Association of

Securities Dealers ("NASD"), likewise maintained that:

> It is a violation of NASD Conduct Rule 2110's
> requirement to observe high standards of
> commercial honor and just and equitable
> principles of trade for registered
> representatives to subvert these requirements by
> sharing commissions generated by securities
> transactions with non-registered persons.

In re Ryerson, Complaint No. C9B040033 (Jan. 24, 2005).


While SEC no-action letters are not binding on New

York courts, they are widely regarded as persuasive authority.

SEC v. Kern, 425 F.3d 143, 151 n.5 (2d Cir. 2005)

(distinguishing rather than ignoring a no-action letter); New

York City Employees' Ret. Sys. v. SEC, 45 F.3d 7, 13 (2d Cir.

1995) ("While the court would treat the no-action letter as

persuasive, the court need not give it the same high level of

deference that is accorded formal policy statements or rule-

making orders."); see also Amalgamated Clothing & Textile

15

Workers Union v. Wal-Mart, 821 F. Supp. 877, 884- (S.D.N.Y. 1993) (devoting pages of analysis to 25 years of SEC no-action letters as persuasive authority on the principal legal issue, citing the SEC's "vast experience of daily contact with the practical workings" of the relevant rule (quoting Peck v. Greyhound Corp., 97 F. Supp. 679, 681 (S.D.N.Y. 1951))).

Finally, WCM has asserted that the Plaintiff is "not an innocent party" capable of invoking § 29(b) to void an illegal agreement under the Exchange Act, and so regardless of other issues cannot avail herself of this defense. WCM Mem. of Law, at p. 10. More specifically, WCM asserts that Schatzki may not invoke § 29(b) because she knew of the contract's illegality and agreed to it anyway. Id. at p. 11. However, the Plaintiff testified that she scrupulously observed the requirements of the Exchange Act and never agreed to give WCM the Broker-Dealer Income as it alleges. See Unger Decl., Ex. C at 152:11-153:15; Ex. F. at ¶¶ 6-7. This is a genuine dispute as to a material fact. WCM cannot accomplish what it aims to do by reference to its own, unproven assertions.

Where a contract cannot be performed without illegality, a court will not intervene as to its subject matter, but leave the parties as they stand. Here, WCM seeks to invoke

16

the power of the Court to enforce a tainted contract. See

Couldock & Bohan, Inc. v. Societe Generale Securities Corp., 93

F. Supp. 2d 220, 233 (D. Conn. 2000) ("[The Court] need not

decide whether Defendant is an innocent party, since . . . it

seeks to avoid the contract [violating § 29(b)], not to enforce

it. . . . The Court will not lend its assistance in enforcing

the [] agreement."). Or, in the words of the Supreme Court,

where "it is necessary to prove the illegal contract in order to

maintain the action, courts will not enforce it." Kaiser Steel

Corp. v. Mullins, 455 U.S. 72, 77 (1982) (quoting McMullen v.

Hoffman, 174 U.S. 639, 654 (1899)). Accordingly, the factual

question of Schatkzi's "unwilling innocence" defeats Defendant's

summary judgment.

     While the Illegality Defense remains, the Plaintiff

has indicated that the commissions might be subject to a limited

reconciliation, see Unger Decl., Ex. C. at 152:24; 153:17, which

if established by evidence might lead to an offset in

Defendant's favor.


**V.   The Defendant's Motion to Dismiss the Plaintiff's Fourth
       Cause of Action is Dismissed**

     The partial summary judgment against Plaintiff's

contract claims granted in the November 25 Order dismissed Count

III (the "Override Claim") of Plaintiff's TAC and also dismissed
Count IV (the "Commissions Claim") in substance, stating that
"the plaintiff's contract claim for commissions is dismissed."
November 25 Order at *18. The November 25 Order stated that
"Schatzki seeks commissions that she alleges she was owed for
2009 and 2010 under an oral contract," and that "[b]ecause
Schatzki's contract claim is based on an oral agreement that
called for performance of an indefinite duration, it is barred
by the Statute of Frauds." Id. at *19. As set forth above, on
appeal, the November 25 Order was reversed and remanded. The
effect and scope of the remand is at issue.

According to the Defendant, the Count IV, the
Commissions Claim, was abandoned at trial and on appeal. The
Plaintiff maintains that the claim was dismissed by the November
25 Order and that the dismissal, presumably on the grounds of
the Statute of Frauds, was reversed by the Circuit and remanded
for trial.

Any ambiguity in the November 25 Order and the absence
of any clarification of it is, of course, regrettable in the
context of this hard-fought litigation. However, the language
and import of the November 25 Order and of the mandate require

18

the dismissal of the Defendant's motion to eliminate the
Commissions Claim from the retrial.

Although Defendants did not move for summary judgment
on the Commissions Claim, the Court was not constrained by
Defendants' motion papers, and the same Statute of Frauds issue
applied to both claims. See, e.g., Rivkin v. Diversified Realty
Grp. Partners, No. 86 Civ. 9048 (CSH), 1988 WL 127069, at *2
(S.D.N.Y. Nov. 22, 1988) (looking to papers beyond the summary
judgment briefs to decide the motion). As noted above, the
November 25 Order dismissed the Commissions Claim, beginning its
analysis with "Schatzki seeks commissions that she alleges she
was owed for 2009 and 2010." November 25 Order, at *19. Since
Plaintiff BPP did not assert any claim to commissions, and the
Override Claim made no mention of commissions at all, TAC ¶¶ 78-
91, this section of the Opinion appeared to deal with Count IV
of the TAC, which sought relief on Schatzki's claim for
commissions for the years 2009-2010.

The Circuit discussed both of the different breach of
contract causes of action, and reversed and remanded both. Its
opinion identifies and discusses the Statute of Frauds arguments
raised by WCM, and concludes "that both alleged agreements were
terminable at will . . . . Accordingly, we vacate the district

19

court's award of summary judgment as to the breach of contract claims." Remand Order, at 14.

When an appellate court remands and directs further proceedings, the district court "must comply strictly with the mandate rendered by the reviewing court" and "may not deviate" from it. Huffman v. Saul Holdings Ltd P'ship, 262 F.3d 1128, 1132 (10th Cir. 2001) (citation omitted); see also United States v. Quintieri, 306 F.3d 1217, 1225 (2d Cir. 2002) ("[A] trial court [must] follow an appellate court's previous ruling on an issue in the same case.") (citations omitted); United States v. Rivera-Martinez, 931 F.2d 148, 150 (1st Cir. 1991) ("When a case is appealed and remanded, the decision of the appellate court establishes the law of the case and it must be followed by the trial court on remand.") (emphasis in original) (citation omitted). Therefore, Count IV, the Commissions Claim, remains to be tried on remand.

**Conclusion**

Based on the facts and conclusions set forth above, the motion of the Defendant to strike the Plaintiff's illegality defense and Count IV is denied, and the cross-motion dismissing WCM's First Counterclaim is granted.

It is so ordered.


New York, NY
November 9, 2016

                                                 ROBERT W. SWEET
                                                 U.S.D.J.